# LEONARD E. HOLLOMON.

## *vs.*

## THE BALTIMORE AND VIRGINIA RAILROAD CO.

### ET AL.

*Equitable relief*: *based on written instrument; production of the instrument or copy.*

To entitle a party to sustain a bill in equity, he must show an interest in the subject of the suit, or a right to the thing demanded and proper title to institute a suit concerning it, and such interest and right to sue must be fully shown by the bill itself, or the bill is demurrable.                            p. 633

When the plaintiff's equity rests upon a written instrument, referred to in the bill, the instrument itself, or a copy, must be filed in the proceeding, or its non-production accounted for to the satisfaction of the Court.                            p. 633

*Decided February 26th, 1914.*

.Appeal from the Circuit Court of Baltimore City.    (BOND, J.)

The facts are stated in the opinion of the Court.

The cause was submitted to BOYD, C. J., BRISCOE, BURKE, THOMAS, PATTISON, URNER, STOCKBRIDGE and CONSTABLE, JJ.

*O. Parker Baker,* for the appellant.

*Hyland P. Stewart,* for the appellees.

Pattison, J., delivered the opinion of the Court.

In this case the appellant, plaintiff below, filed his bill against the appellees, The Baltimore and Virginia Railroad Co., The Calvert Securities Company, Henry M. Thompson and The Maryland Trust Company, alleging that he, with Littleton M. Sturgis, C. Henry Anderson, Arthur C. Glanville and Willilam J. Cromwell, caused The Baltimore and Virginia Railroad Company to be incorporated on the 14th day of June, 1911, with them as incorporators. This company was incorporated as it is alleged "with the purpose in view of constructing and operating a steam railroad between Baltimore, Maryland and Drum Point, Calvert county, Maryland."

That the Public Service Commission of the State of Maryland upon petition caused to be filed by the plaintiff and the said Sturgis and Anderson on behalf of said company, granted to it the privilege of constructing a railroad between said points upon the route formerly proposed by the old Drum Point Railroad Company and upon which said last named company had expended about $743,000 in grading, etc., and also permitted the said defendant railroad company to issue common stock to the amount of $1,000,000 and bonds to the amount of $500,000.

The bill also alleges that the plaintiff and said Sturgis and Anderson "had expended large sums of money and labor in securing the rights of way for engineers and in clearing about eighteen miles of said road."

The bill further alleges that the plaintiff with Sturgis and Anderson interested the Merchants and Manufacturers' Association of Baltimore City in the construction of said railroad, and that said association appointed a "committee of investigation," with Henry M. Thompson as its chairman. This committee so appointed conferred with the plaintiff and his associates and a favorable report was made by the committee and adopted by the association.

Thereafter it is alleged Thompson stated to the plaintiff and his said associates that Henry M. Baker, the president

of said association, had agreed to become president of said
railroad company and the members of said association had
agreed to subscribe to its stock in order to insure its comple-
tion within four months, but as a condition precedent to Mr.
Baker becoming president of the company and the members
of the association subscribing to its stock, the plaintiff and
his associates were to give to said Thompson "a power of
attorney to act for them and that they should assign their
interest in said railroad under the terms of a secret trust as
follows: That said Henry M. Thompson, David B. Stewart,
Hyland P. Stewart and William B. Bahn should act for the
best interests of your orator and his associates and in every
manner preserve the rights of your orator and his associates,
whereupon your orator relying upon the truth of said state-
ments, conveyed without consideration on April 1, 1912, to
said defendant, Henry M. Thompson, the legal title to his
said interests, reserving the equitable title aforesaid in him-
self, and did also execute a power of attorney as demanded
by him, as aforesaid.

That two days prior to said assignment, the plaintiff and
his associates entered into a contract with the said Thompson,
David B. Stewart, Hyland P. Stewart and William B. Bahn,
whereby the plaintiff and his associates agreed to give to said
Thompson and his above-named associates "ten per cent each
of the net profits derived from the promotion of said rail-
road."

And at such time the plaintiff and Sturgis "as owners or
incorporators of said railroad, entered into an agreement with
the Baltimore and Virginia Railroad Company by the terms
of which they were to procure for and sell and deliver to it
the rights of way and secure *bona fide* subscriptions of respon-
sible and approved subscriptions for 10,000 shares of the
capital stock, as will more fully appear by reference to the
original copy of said agreement now in the hands of the
Maryland Trust Company."

That the said Thompson, Hyland P. and David B. Stewart
"acting in a fiduciary capacity with your Orator and his asso-

ciates, only secured 400 shares of $20,000 of *bona fide,* responsible subscribers, and only $2,000 of which was paid in, and although the law specifically provides that there shall be $100,000 worth of stock actually subscribed and ten per centum of which shall be paid in before organization, the said parties, in order to defeat the purposes of said law, caused to be incorporated the defendant, The Calvert Securities Company, with an authorized capital stock of $30,000 of which there has only been $18,000 actually subscribed and paid for, and through which, in order to avoid personal liability, they subscribed to $180,000 worth of the stock of said railroad and paid all of the capital stock actually subscribed, leaving said company without any further assets or funds to pay the second subscriptions of ten per centum" which the bill alleges "constitutes a fraud upon the law" and does not "comply with the contract between the railroad and the *bona fide* subscribers, which contract provided no subscriptions to this form known as form A to exceed 100 shares."

"That by the terms of the said agreement of your orator and his associates with the Baltimore and Virginia Railroad Company, the subscribers for the first 4,000 shares were to receive a bonus of ¾ of a share for each share subscribed, which ¾ of a share is deducted from the profits of your orator and his associates, and by this illegal and improper subscription to the capital stock of said railroad by The Calvert Securities Company your orator will be deprived of a large sum of money, to his great detriment; will also be deprived of his rights as an incorporator, and will lose all control of said railroad."

The bill then alleges the organization of The Maryland and Virginia Railroad Company by the *"bona fide* subscribers of the first four hundred shares (of its stock) or $20,000, and the illegal subscriber, The Calvert Securities Company" which was followed by the election of the directors and officers of said company, all of which the bill alleges was illegal, and that thereafter the aforesaid officers so illegally and unlawfully elected demanded from the defendant, The

Maryland Trust Company, the twenty thousand dollars paid in on the four hundred shares of stock, and all of the papers and etc., in their hands and unless enjoined the said Trust Company will turn over to said officers said funds."

The bill prays:

First.—That the Maryland Trust Company be enjoined from paying to the defendant the Baltimore and Virginia. Railroad Company, the moneys now on deposit with them, paid upon the said four hundred shares of the said railroad company.

Second.—That the said Maryland Trust Company be enjoined from turning over to the said railroad company the papers, maps, books or other personal property now in their hands.

Third.—That the assignment mentioned in the petition to the defendant Henry M. Thompson be declared void and illegal, and he be enjoined from acting thereunder.

Fourth.—That the said Thompson be enjoined from acting in any capacity for your orator under the terms of the aforesaid assignment and power of attorney.

Fifth.—That the organization of the said Baltimore and Virginia Railroad Company be declared to be illegal and void.

Sixth.—And for general relief—

To the bill demurrers were filed by all of the defendants, one of the grounds of the demurrer being, that it is not shown by the bill that he has any interest whatever in the subject matter entitling him to any relief in equity.

The demurrers were sustained and the bill dismissed. It is from the order of the lower Court sustaining the demurrers and dismissing the bill that this appeal is taken.

It is upon the facts alleged in the bill that the rights of the plaintiff to the relief sought are to be determined. It is for that reason that we have very fully stated the facts contained in the bill, which in most part are stated in the language of the bill.

It is a fundamental principle of equity pleading that, to entitle a party to sustain a bill, he must show an interest in the subject of the suit or a right to the thing demanded, and proper title to institute the suit concerning it; and such interest or right to sue shall be fully shown by the bill itself— and if not a demurrer will lie. *Mitf. Eq. Pl.* 272, 329; *Sto. Eq. Pl.,* sec. 728, 730; *Sellman* v. *Sellman,* 63 Md. 522, and other cases.

It is alleged by the bill that the plaintiff with other incorporators of the company acting for and on its behalf caused to be done certain things that are said to have been to the advantage of the company and, as it is alleged, they also expended labor and money in advancing the purposes and objects of the corporation by "securing rights of way" and in clearing a "number of miles of said road."

The bill then alleges that the plaintiff and his said associates thereafter, under "the terms of a secret trust" assigned unto the defendant Thompson all their legal "title to their said interest" in said "railroad" reserving "their equitable title" therein and at the same time executed to said defendant the power of attorney mentioned in the bill. No copy of said secret trust, or of said power of attorney or of the agreement made by the plaintiff and Sturgis with the Maryland and Virginia Railroad Company, also mentioned in the bill, was filed with it as an exhibit, as should have been done, or his failure to do so accounted for by him in seeking the relief sought by the bill.

The character of the interest held by the plaintiff in said road at the time of such assignment is not shown. Nor can it be gathered from the allegations of the bill what was assigned and what was reserved by the aforesaid assignment. It cannot therefore be said that these alleged facts show that the plaintiff has such an interest in the subject of this suit as to entitle him to the relief here sought. This conclusion is reached without reference to the other questions raised. We will therefore affirm the decree appealed from.

*Decree affirmed, with costs to the appellees.*